IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Civil No. 3:20-cv-00015 |
| Plaintiff, ) | |
| ) | |
| v.      ) | VERIFIED COMPLAINT FOR |
| ) | FORFEITURE *IN REM* |
| $9,280.00 IN U.S. CURRENCY, ) | |
| ) | |
| Defendant.   ) | |
| ) | |

Plaintiff, United States of America hereby files and serves this VERIFIED COMPLAINT IN REM and alleges as follows:

## I.     NATURE OF THE ACTION

1.    This is an action to forfeit and condemn specific property to the use and benefit of the United States of America ("Plaintiff") for involvement, as set forth below, in violations of 21 U.S.C. § 846 (attempt and conspiracy) and § 841(a)(1)(prohibited acts).

2.    The defendant property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) as money or a thing of value furnished or intended to be furnished by a person in exchange for a controlled substance, in violation of subchapter I – Control and Enforcement, of Chapter 13 – Drug Abuse Prevention and Control, and Title 21 – Food and Drugs, of the United States Code, and proceeds traceable to such an exchange, and money used or intended to be used to facilitate any violation of said subchapter.

## II.  DEFENDANT *IN REM*

3. The defendant property is generally described as $9,280.00 in United States currency seized in the execution of a State search warrant at the residence of 420 River Drive, Apartment #205, Davenport, Iowa. The defendant property is in the custody of the U.S. Marshals Service.

## III. JURISDICTION AND VENUE

4. This Court has jurisdiction over an action commenced by the United States of America under 28 U.S.C. Section 1345 and over an action for forfeiture under 28 U.S.C. Section 1355(a).

5. This Court has *in rem* jurisdiction and venue over the defendant property under 28 U.S.C. Sections 1355(b) and 1395(b) as the acts or omissions giving rise to the forfeiture occurred in this district and because the defendant property was seized from and is located in this district.

6. The government believes, based on available knowledge, information, and belief, that the following factual contentions have evidentiary support, or will likely have evidentiary support after a reasonable opportunity for investigation and discovery.

## IV. FACTS

7. The "Controlled Substances Act" was enacted by Congress as Title II of the "Comprehensive Drug Abuse Prevention and Control Act of 1970," Pub.L. No. 91-513, 84 Stat. 1236 (1970) (codified at 21 U.S.C. §§ 801-904).

8. The term "controlled substance" is defined in 21 U.S.C. § 802(6) to mean a drug or other substance, or immediate precursor, included in any of the five schedules of such substances set forth in subchapter I of Title 21.

9. Schedule I substances have a high potential for abuse, have no currently accepted medical use in treatment in the United States, and there is a lack of accepted safety for use of these controlled substances under medical supervision. 21 U.S.C. § 812(b)(1)(A)–(C).

10. Under the Controlled Substances Act, only persons registered by the Attorney General of the United States, in accordance with rules and regulations promulgated by the Attorney General, may legally manufacture or distribute controlled substances. 21 U.S.C. § 822(a), (b).

11. Under the Controlled Substances Act, it is unlawful to distribute, dispense, or possess with intent to distribute, a controlled substance, unless authorized by law to do so. 21 U.S.C. § 841(a)(1).

12. Under the Controlled Substances Act, it is unlawful to knowingly possess a controlled substance, absent certain circumstances. 21 U.S.C. § 844(a).

13. Under the Controlled Substances Act, marijuana is a Schedule I controlled substance.

14. During October and November of 2019, the Scott County Sheriff's Department Narcotics Unit (SCSDNU) was been involved in a marijuana investigation of Terry Andre Barnes Jr. (hereinafter referred to as Barnes).

15. In April of 2018, SCSDNU and DEA arrested Barnes while he was in possession of between 1 and 2 lbs. of marijuana, digital scales, and $17,054.00 in cash.

16. This is a distribution quantity of marijuana.

17. Drug dealers use digital scales to weigh their product before distributing it to customers.

18. The $17,054 was forfeited federally as drug money, and Barnes did not contest it.

19. During October and November 2019, the SCSDNU was monitoring the social media posts of Barnes, and saw photographs of him with large amounts of cash, marijuana, and using social media to advertise marijuana for sale in amounts up to and over a pound.

20. In early November 2019, SCSDNU identified a storage unit in Davenport, Iowa which Barnes was renting. The SCSDNU obtained a search warrant for this unit, and found a large empty plastic tote inside the unit with marijuana residue, suggesting Barnes had at one time been using the unit to store marijuana.

21. On November 12, 2019, the SCSDNU executed a state search warrant at Barnes' residence, at 420 River Drive, Apartment #205, Davenport, Iowa, the residence of Barnes and his girlfriend, Sandra Avalos.

22. Barnes was the only person at the residence at this time.

23. Upon walking into the kitchen area of the apartment, officers observed a large amount of currency on the kitchen counter next to a money counter.

24. Drug dealers who traffic in controlled substances that generate large amount of cash may, from time to time, use money counters to assist them in taking an inventory of the proceeds they have earned through illegal activity.

25. It was obvious to officers that Barnes had just been in the process of counting the money.

26. The bills were in all denominations. Some were loose and some were rubber-banded together.

27. While searching the living room area, officers located an additional amount of currency in the bottom of a flower vase next to the television.

28. A SCSDNU detective interviewed Barnes after Barnes agreed verbally and in writing to his *Miranda* rights.

29. Barnes stated that he has a part time job at the mall and he also makes money by rapping.

30. Barnes stated the money belonged to him and Avalos.

31. Barnes was not sure how much money there was, but stated that it wasn't even $10,000.00.

32. Barnes would not provide any additional information regarding the source of the money.

33. The currency which had been seized from the kitchen counter totaled $7,280.00.

34. The currency which had been seized from the flower vase totaled $2,000.00. The funds were aggregated for a total of $9,280.00.

35.   Based on the training and exriences of the case agent, and the evidence known to him, the $9,280 appears to be the proceeds of illegal sales of marijuana.

## CLAIM FOR RELIEF

WHEREFORE, the United States prays that the defendant property be forfeited to the United States and that it be awarded its costs and disbursements in this action and for such other and further relief as the Court deems property and just.

Respectfully submitted,

Marc Krickbaum
United States Attorney

By: /Craig Peyton Gaumer
Craig Peyton Gaumer
Assistant United States Attorney
U. S. Courthouse Annex,
Suite 286
110 East Court Avenue
Des Moines, Iowa 50309
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: craig.gaumer@usdoj.gov

## VERIFICATION

I, Special Agent Jay Bump, hereby verify and declare under penalty of perjury that I am a Special Agent with the United States Drug Enforcement Administration, and that I have read the foregoing Verified Complaint *in Rem, United States v. $9,280.00 in U.S. Currency* and know the contents thereof and the matters contained in the Verified Complaint are true to my own knowledge, except for those matters not within my own personal knowledge and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds for my belief are the official files and records of the United States and information provided to me by other law enforcement officers, as well as my investigation of this case, together with others, as Special Agent with the United States Drug Enforcement Administration.

Dated: February 10, 2020.

Jay Bump, Special Agent
U.S. Drug Enforcement Administration